George F. JOHNSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-15213.

Court of Criminal Appeals of Oklahoma.

Dec. 2, 1970.

970

Sam Sullivan, Durant, James Bounds, Hugo, for plaintiff in error.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge:

George F. Johnson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Choctaw County for the crime of Murder, his punishment set at life imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial revealed that the defendant's wife, Isabelle, had been ill for several days prior to December 23, 1967. Mary Bell Opsal, the nextdoor neighbor, visited her the evening of December 22nd and Isabelle appeared to be recovering. She received a telephone call at approximately 4:30 the following morning from the defendant, and returned to the apartment. Isabelle was dead, lying in bed on her back, in a normal position.

William Lampton, an employee of the funeral home, was called to the defendant's home and observed the body lying on the bed. He observed that a little bit of rigor mortis had set in and noticed a bruise on her nose and on the right side of her face (T 177). He removed the body to the funeral home and while preparing the body for embalming, discovered the upper dentures were lodged back in the oral cavity of the mouth. He subsequently delivered the body to Dr. Ewing in McAlister for a post-mortem examination. He testified on cross-examination that the scene appeared perfectly normal and that the defendant said his wife had fallen and bruised her face.

Dr. Carol Ewing, a pathologist, performed an autopsy on the body of Isabelle Johnson. She found no signs of any natural disease process. She discovered several conjunctival hemorrhages and scleral petechial pinpoint hemorrhages which indicate asphyxia or suffocation. A photograph of the upper torso of the deceased depicting the hemorrhages taken at the autopsy, was introduced over the objection of the defendant. She observed bruises on the nose and fingernail marks on the side of the face. The cause of death was the result of being deprived of oxygen caused by suffocation. She admitted, on cross-examination, that she originally made the autopsy report which indicated that the cause of death was "probably homicide by smothering." (T 231). She could not conceive any normal way the dentures could be lodged in the pharynx except by being pushed by another human being.

Dr. Luke, the State Medical Examiner, answered a hypothetical question containing facts similar to the instant case. The cause of death, in his opinion, would be asphyxia caused by compressing the nose and pushing the dentures back into the back of the throat.

Richard Cummins testified, over the objection of the defendant, that in September, 1965, he received an anonymous telephone call threatening harm to his family unless he came to Hugo and talked to the defendant. He drove to the defendant's bar, wherein the defendant advised him he wanted his wife killed so he could collect the insurance. The defendant gave him a map of the route of a trip Isabelle and another lady were to take and suggested that Cummins kill both ladies and a dog, making it look like an accident. The defendant gave him $100.00 which Cummins, in turn, gave to two men, John and Gary Stringer, who he had brought along to help with the job. They followed the two ladies, but Johnny and Gary got arrested for carrying a gun prior to completing the job.

Sheriff Ed Thorton testified that Gary Stringer and another party were arrested on September 7, 1965, and were carrying a gun in their automobile and that the defendant paid their fines.

Bill Warren, Claims Manager of an insurance company, testified about a $10,-000.00 policy covering accidental death taken out by the defendant's wife in February, 1965. The defendant was the beneficiary of the policy.

Ray Cox, an admitted felon with numerous arrests, testified that the defendant, in November, 1965, asked him if he would kill a woman, a man, and a dog, making it look like an accident, for $4,000.00. Jo Frances

Thomas had been employed by the defendant at his bar in 1965. She told of conversations with the defendant wherein he talked about wanting to divorce his wife, but could not because she would get everything he owned. He wanted to marry a girl from Mexico named Martha if he could get a divorce from Isabelle.

Mr. Lampton was recalled as a defense witness and testified that the photograph did not accurately depict the deceased as he originally found her. He did not observe anything at the scene that would indicate the death was other than natural. Mary Opsal was also recalled by the defense. She verified Lampton's testimony that everything at the scene indicated a normal death.

The defendant's first proposition of error alleges that the introduction of the photograph of the deceased was highly prejudicial to the right of defendant to a fair and impartial trial. The photograph of which the defendant complains was taken at the autopsy and shows primarily two sets of hands applied to the face of the deceased. The defendant contends that the photograph shows that the features of the deceased were artificially distorted to the extent that the total effect created was one of grotesqueness which could have no other effect than to highly prejudice the jury against the defendant.

■■ We have carefully examined the entire record, including the photograph, and cannot agree with this contention by the defendant. This Court has consistently held that such photographs are admissible in evidence when they have some probative value. In Pate v. State, Okl.Cr., 361 P.2d 1086, we stated in the 8th and 9th paragraphs of the Syllabus:

"8. When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places.

"9. Although it is error to receive in evidence gruesome photographs of a homicide victim, designed primarily to arouse the passion of the jury, such photographs are admissible; when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant."

See also Ashton v. State, Okl.Cr., 478 P.2d 932.

■ In the instant case the photograph was introduced to support the testimony of Dr. Ewing that death was caused by asphyxiation resulting from conjunctival and scleral petechial pinpoint hemorrhage. The conjunctival hemorrhages could only be observed by opening the eyes. The jury was specifically instructed by the trial court to not consider that portion of the picture dealing with the autopsy incision as having no bearing to the case (T 264). We are of the opinion that the trial court properly admitted the exhibit after finding it had probative value. We, therefore, find this proposition of error to be without merit.

The defendant's next proposition of error alleges the court erred in refusing to give defendant's requested instruction number one. The instruction was as follows:

"You are instructed that, having been permitted to hear evidence of witnesses who testified to events occurring more than two years prior to the date of the alleged crime with which the defendant is charged, while you may consider this evidence, you may also determine and scrutinize its remoteness in point of time in bearing upon relevancy to this case."

■ It is a well settled principle that a defendant is entitled to an affirmative instruction embracing his theory of defense. Crossett v. State, 96 Okl.Cr. 209, 252 P.2d 150; Turpen v. State, 89 Okl.Cr. 6, 204 P. 2d 298. In Turpen v. State, supra, we further stated:

" * * * It is not proper for the court to comment upon or stress particu-

lar evidence of either the state or defendant and in this case, if the disputed words in the above instruction had been given, it would have been a comment by the court on the evidence."

This Court has previously held that it is not authorized to reverse a conviction on the ground of error in instructions, unless from inspection of the entire record it appears that the defendant was injured thereby, to determine such issue, the court must consider the guilt or innocence of defendant. Melot v. State, Okl.Cr., 375 P.2d 343. In the instant case, the evidence of guilt of the defendant is overwhelming. We, therefore, are of the opinion that the trial court properly refused to give the requested instruction for the reason that the same did not present a material issue for consideration by the jury and failure to give such instruction did not deprive the defendant of a fair and impartial trial. We find this proposition to be without merit.

■ The next proposition contends that the court erred in "admitting into evidence the testimony of Richard Cummins and Ray Cox." The testimony of both witnesses concerned the defendant attempting to employ them to kill his wife some two years prior to her actual death. The general rule is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial, is inadmissible. In Moulton v. State, Okl.Cr., 476 P.2d 366, we recently stated:

"However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other."

See also Turnbow v. State, Okl.Cr., 451 P.2d 387; Parks v. State, Okl.Cr., 457 P.2d 818, and Epperson v. State, Okl.Cr., 406 P.2d 1017.

■ We are of the opinion that the trial judge properly admitted the testimony of Cummins and Cox which we feel falls under all five exceptions to the general rule. We, therefore, find this proposition to be without merit.

■ The defendant's final proposition of error states: "Comment in closing argument by State upon defendant's failure to testify, is reversible error." The portion of the prosecuting attorney's closing argument of which the defendant complains is as follows:

"The burden in this case of proving circumstances of mitigation or that justify it or excuse it devolves upon this defendant, he collapsed under them and the burden lies just where it devolved or just where it rested upon the proof that this homicide was committed by * * *" (CM 410).

We have examined the entire closing argument of the prosecuting attorney and conclude that the State's counsel was not making a specific reference to the defendant's failure to testify. The defendant had, in fact, called two witnesses in his behalf, the testimony of whom the prosecuting attorney was referring in the closing argument rather than commenting on the defendant's failure to testify. In the case of Denney v. State, Okl.Cr., 346 P.2d 359, in the second paragraph of the Syllabus, we stated:

"The Oklahoma statute prohibiting comment on failure of defendant to testify is comprehensive in the extreme and the Court of Criminal Appeals will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witness in her behalf. This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the State's evi-

dence by proper proof other than that which might be given by the defendant personally."

See also 53 Am.Jur., Trial, § 471, and Lewis v. State, Okl.Cr., 458 P.2d 309.

We are of the opinion that the prosecuting attorney made a proper comment upon the inferences reasonably drawn from a failure to controvert the state's evidence. We, thus, find this proposition to be without merit.

We conclude that the evidence amply supports the verdict of the jury, the punishment imposed was the minimum provided by law, the record is free of any error which would justify modification or reversal, and under such circumstances, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

NIX, J., concurs.

BRETT, P. J., concurs in result.