Joel William NOBLES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–621.

Court of Criminal Appeals of Oklahoma.

Aug. 2, 1983.

Rehearing Denied Sept. 22, 1983.

Larry L. Oliver, G. Bruce Sewell, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., John O. Walton, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## MEMORANDUM OPINION

BUSSEY, Presiding Judge:

The appellant, Joel William Nobles, hereinafter referred to as the defendant, was convicted of Manslaughter in the First Degree, After Former Conviction of a Felony, in Tulsa County District Court, Case No. CRF–81–3660. He was sentenced to forty (40) years' imprisonment, and he appeals.

The defendant, Joel Nobles, had been drinking the afternoon of October 14, 1981. He entered the Concession Stand Lounge in Tulsa later on that night to see his girlfriend. He left the bar to get money to pay off a bet his girlfriend had just lost playing pool. After Nobles returned, he began arguing with her. The bartender asked them both to leave. The victim, Ben Wagner, a friend of the bartender, told Nobles to do as the bartender said. Testimony conflicted on whether the victim escorted the defendant outside and then hit him or whether the victim just walked him to the door. In any event, the defendant left the bar, returned with a gun within one to five minutes and shot and killed Wagner. The defendant testified that he could not remember coming back into the bar and shooting the victim.

In his first assignment of error, the defendant argues that the trial court improperly refused to grant his motion for a continuance. This contention is without merit. First, the attorney appointed to represent the defendant had more than four months to prepare the defendant's case be-

fore the commencement of trial. Secondly, we have held that a motion for continuance is addressed to the sound discretion of the trial court whose ruling will not be disturbed on appeal absent a showing of abuse. *Richardson v. State,* 600 P.2d 361 (Okl.Cr. 1979). The defendant's attorney made an oral motion for a continuance. The record reveals that the court was prepared to grant the continuance, and told the defendant that he should pay attention to his attorney's advice.[1] Only after the defendant insisted that he desired to go to trial did the trial judge allow the trial to begin. Under the circumstances we cannot say that the trial court abused its discretion in overruling the motion for a continuance.

His second assignment of error is closely related to his first. He argues that because the continuance was denied, he was denied effective assistance of counsel. He submits first, that his counsel failed to present the defense of unconsciousness and second, that his counsel did not obtain the testimony of a witness, who, the defendant asserts, would have been able to corroborate his testimony that the victim accompanied him outside the bar.

▮ In *Johnson v. State,* 620 P.2d 1311, (Okl.Cr.1980), this Court announced that the standard for determining whether a criminal defendant has been afforded effective counsel is whether the defense attorney has demonstrated the skill of a reasonably competent attorney. An appellate court should not, with perfect hindsight, attempt to second guess trial strategy which was viable. *Johnson,* supra, at 1313. This Court cannot say that defense counsel failed to demonstrate reasonable competence by not raising the unconsciousness defense; opting instead to present a defense of voluntary intoxication to lessen the first degree murder charge to first degree manslaughter.

▮ Next the appellant argues that his counsel failed to obtain the testimony of Michael Turner, who testified at the preliminary hearing that he saw the victim go outside the bar with the defendant. Turner's testimony contradicted three of the State's witnesses who testified that the victim did *not* go outside the bar with the defendant. Turner's testimony would have helped corroborate the defendant's testimony that he was hit in the head after he was out of the bar. However, in order for Turner's testimony from the preliminary hearing to be admitted under the former testimony exception to the hearsay rule, the witness' unavailability must be shown. *Thomas v. State,* 620 P.2d 1321 (Okl.Cr. 1980). See also, 12 O.S.1981, § 2804. Defense counsel was unable to show that Turner was unavailable and therefore properly did not attempt to introduce his testimony from the preliminary hearing. This demonstrates defense counsel's cognizance of the rules of evidence rather than his ineffectiveness.

In *Smith v. State,* 650 P.2d 904 (Okl.Cr. 1982), we held that the omission of an expert witnesses testimony reflected an extreme lack of diligence on the part of defense counsel to insure that defendant received a fair trial. In *Smith,* defense counsel made no effort to contact a psychiatrist, who had been subpoenaed by the State for the preliminary hearing, to ascertain what her testimony might be. In the present case, defense counsel *did* make an effort to find witnesses. Subpoenas were issued the week before the trial under the belief that the trial would actually start three weeks later. In sum, this Court cannot find a lack of due diligence on the part of defense counsel. Any shortcomings were not the result of counsel's lack of preparation, but rather were a result of the defendant himself, who demanded the commencement of the trial, knowing that his counsel was not prepared, and that some witnesses could not be found.[2]

▮ In his third assignment of error, the defendant contends that the trial court failed to instruct the jury on the defense of unconsciousness. As the defendant correctly recognizes, jury instructions are left to

---

1. See Appendix. ▮

2. See Appendix.

the trial court's discretion and that court's judgment will not be interfered with as long as the instructions, when considered as a whole, fairly and accurately state the applicable law. *Batie v. State*, 545 P.2d 797 (Okl.Cr.1976). The defendant's brief only asserts a bare conclusion that the trial court's instructions were insufficient. We are of the opinion that the evidence supported an instruction on voluntary intoxication and therefore conclude that the jury's instructions, as a whole, fairly stated the applicable law. Since the defendant opted for a voluntary intoxication defense, he did not specifically raise in error in his new trial motion the failure to instruct on unconsciousness. This waives the alleged error and fails to preserve it for appellate review. *Nutter v. State*, 658 P.2d 492 (Okl. Cr.1983). See also, *McDuffie v. State*, 651 P.2d 1055 (Okl.Cr.1982).

■■■■■ The defendant's fourth assignment of error is that the trial court admitted photographs of the victim to produce an emotional impact on the jury. The test for admissibility of allegedly gruesome pictures is whether the probative value of the evidence, as it relates to an issue in the case, outweighs the prejudicial effect. *Glidewell v. State*, 626 P.2d 1351 (Okl.Cr.1981), citing *Vierrether v. State*, 583 P.2d 1112 (Okl.Cr. 1978). Exhibit No. 8, a black and white photograph, was admitted into evidence as it depicted from a distance, the victim and part of the crime scene. Therefore, this Court finds, as did the trial judge, that the complained-of photograph had probative value, outweighing the danger of prejudice.

■■■■ In his final assignment of error, the defendant complains of alleged improper closing arguments by the State and improper cross-examination. We have carefully examined the entire cross-examination of the defendant and find that although some of the questions propounded were improper, the trial court correctly sustained objections thereto. In *Sands v. State*, 542 P.2d 209 (Okl.Cr.1975), we stated:

> The determination of whether or not conduct and remarks of counsel will serve as a basis for reversal is contingent upon the effect which said remarks have on the rights of defendant. We must keep in mind that the defendant's rights are of utmost importance and if remarks of the prosecutor, though inappropriate or rude, do not affect the rights of the defendant, then they shall serve no basis for reversal. In *Kite v. State*, 506 P.2d 946 (Okl. Cr.1973) and *Pickens v. State*, 450 P.2d 837 (Okl.Cr.1969), this Court held that for remarks of the prosecuting attorney to constitute reversible error they must be flagrant and of such a nature as to be prejudicial to the defendant. . . .

We are of the opinion that the prosecuting attorney's conduct in the cross-examination of the defendant was not so flagrant as to warrant reversal.

■■■■ We turn now to the State's alleged improper closing argument which was objected to at trial and which was included in the defendant's motion for a new trial. The defendant objects to the portion of the State's closing argument that called him a "violent man" and a "convicted felon." We have consistently allowed closing arguments wide latitude, encompassing a wide range of discussion and argumentation. See, *Frazier v. State*, 607 P.2d 709 (Okl.Cr. 1980), and the cases cited therein. We have also held that the prosecutor may make any reasonable inference from the evidence offered at trial. *Bryant v. State*, 585 P.2d 377 (Okl.Cr.1978). It is clear that the defendant, under cross-examination, admitted to a conviction of Assault and Battery with a Dangerous Weapon with Intent to do Bodily Harm. Therefore, we find his comments were reasonable inferences from the evidence.

Accordingly, the judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur.

## APPENDIX

The transcript of the proceedings on the motion for continuance were as follows:

## PROCEEDINGS

THE COURT: Case CRF–81–3660, State versus Joel William Nobles. In sounding the docket earlier today the Court was advised by Mr. Hart that he was not ready to proceed with trial. I had been advised earlier that the State was not going to voice any objection to a continuance on behalf of the Defendant, and in fact might even concur in a request for a continuance. I had briefly discussed the matter with Mr. Nobles, in Court, who voiced objections to it being passed. At that time the Court announced we would begin a jury trial in this case immediately. Time is 11:20 a.m., Defendant present in person, represented by Mr. Hart, the State by Ms. Priore and Mr. Robertson.

MR. HART: Your Honor, my announcement would be the same, I am not prepared for trial. I was in a trial in front of Judge Lamm last week from Tuesday until 8:00 o'clock Friday night involving the State of Oklahoma versus James Alfred Donald Jr. Previously set on your docket this morning, or Monday morning and again this morning was State of Oklahoma versus Ralph Carlos, involving three counts, Murder in the Second Degree, two counts Shooting with Intent to Kill, announced ready on that trial. That matter was disposed of through motions and decision by this Court and the State of Oklahoma. I have informed Mr. Nobles I am not ready. I have informed him of two possible trial dates. Initially June the 7th, which you had indicated to me, and then in chambers earlier today indicated a date just three weeks away of May the 17th. I told my client that I could be ready by May the 17th. As far as my representation for this trial, I issued subpoenaes for today, I don't think any of the witnesses were found. I believe all my subpoenaes were returned not served or they may not even be in the file yet, they were issued last week. I have not filed any motions in preparation for trial. I have filed motions pursuant to a motion to quash hearing that this Court heard approximately three to four weeks ago.

My client still voices objections to the May 17th date, tells me he wants to go today, and that's my position. I'm not ready as far as this trial is concerned.

THE COURT: Well Mr. Nobles, you are represented in the trial of this case by a good lawyer, if I was charged with a criminal offense, the same offense you are charged with I wouldn't have any hesitancy of going to trial with Mr. Hart representing me, . . . but I'll guaranty you, although I would have no objections and would like to have Mr. Hart representing me in the trial of the case, I'd want Mr. Hart telling me, I'm ready to go to trial in this matter. I would be reluctant to be pushing the matter for trial where my attorney, who was suggesting to me that he's not prepared, that that's very easy for me to say because I'm not in the county jail and your are, but my client needs to rely on legal advice of his lawer. . . . And people need to bed attentive to legal advise [sic] their lawyers are giving them. He's giving you legal advise [sic] right now when he's telling me he's requesting a pass in this matter. Now I was prepared earlier to continue this matter about six weeks, . . . I don't mind telling you, I told you before I'm ready to try it, I've got other cases behind it, it's not a matter of this is the only case left to try. If we don't try yours wel'll try another one. I'm ready, there are jurors available downstairs if you say you want to go to trial we'll try it. If you get convicted, neither I nor the Appellate Court is going to look with much favor upon complaints well back there on in April on that day when he was getting ready to try it my lawyer said he wasn't ready and so that's one of my grounds of Appeal is my lawyer wasn't ready. They're not going to look with much favor on that. It's not that Martin Hart can't try this case, he's skilled enough he can try cases as far as just putting it on in a moments notice, he's talking about finding out where these witnesses are. Do you know the witnesses he's talking about?

MR. NOBLES: Yes, sir.

THE COURT: Are you prepared to go to trial without those witnesses being here?

MR. NOBLES: Yes, sir.

THE COURT: What say you, Mr. Nobles?

MR. NOBLES: I'd like to go to trial, sir.

THE COURT: Okay. Have Mr. Nobles dressed out back down at Court at 1:30 and we'll call a jury.

MR. HART: His clothes are up there, Judge, I took them up there.

THE COURT: Bring him back dressed out at 1:30.

(WHEREUPON Proceedings Concluded).